## FRANKFORD TRUST CO. v. COMBER et al.

### No. 5242.

Circuit Court of Appeals, Third Circuit.

Dec. 6, 1933.

Henry Panfil and Moore, Gossling & Panfil, all of Philadelphia, Pa., for appellant.

Bertram K. Wolfe, of Philadelphia, Pa., for appellees.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

Morris Baseman and Joseph Baseman, individually, and Morris Baseman, trading as Baseman Coal Company, were adjudged bankrupts. Later their trustee sued the Frankford Trust Company for a transfer, made by Morris Baseman and accepted by the Trust Company, which it is claimed effected a voidable preference. The trustee-plaintiff had a verdict, and from the judgment the defendant bank appealed. Its one valid assignment of error is the refusal of the court to charge its point that: "Under all the credible evidence, and the law applicable thereto, your verdict must be for the defendant."

The facts established by the verdict rendered on credible evidence, as recited by the trial court in its opinion sur motion for new trial, are briefly these:

In April, 1931, Baseman was engaged in the retail coal business and was insolvent. His liabilities included a note for $2400 held by the defendant bank. He told its president: "That the old business is going to be liquidated, that we cannot continue," and that, as a way out, he was going to organize a corporation whereafter the old business and the corporation would be "one and the same thing, the assets and liabilities of the old firm (would be) taken over by the corporation."

The Baseman Coal & Coke Company, the new corporation, was duly organized and the physical assets of Baseman, consisting of stock and equipment, were transferred to it for a fair consideration. He retained, however, his accounts receivable amounting to about $10,000. Thereafter the corporation conducted the coal business and Baseman continued to collect the accounts receivable and to deposit the money in his own name at the bank. There the corporation also had an account which was the active account of the business newly incorporated.

Baseman's note had been renewed and extended from time to time and the bank told him it would have to be paid on the due date of the last extension, which was August 6, 1931. On four different occasions prior thereto, Baseman withdrew $500, or a total of $2000, from his individual account and deposited it in the corporation account. In addition he deposited in the corporation account at least $400 which he had obtained from his accounts receivable. On the day the note became payable, an attorney representing Baseman's creditors called upon the bank and informed one of its officers that Baseman was hopelessly insolvent and that a petition in bankruptcy was to be filed against him. The corporation then had on deposit with the bank more than the amount of Baseman's note and at the close of banking hours, the note being unpaid, the bank applied the cor-

poration's balance to payment of the note in the amount of $2400. And, finally, on this evidence the verdict established that the bank had reasonable cause to believe that Baseman was insolvent and in taking Baseman's money through the channel of the corporation's deposit well within four months of bankruptcy it accepted or effected a preference.

█ The decision of the two questions in this case, (a) whether the transaction involved a balance built up for the payment of the bankrupt's note, and (b) whether the bank's appropriation of that balance, hidden in the account of the corporation, with knowledge of Baseman's insolvency, effected a preference and a corresponding depletion of the bankrupt's estate, depends upon whether or not the rule of New York County National Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380, applies. That decision holds that the balance of a regular bank account at the time of filing the petition is a debt due to the bankrupt from the bank, and in the absence of fraud or collusion between the bank and the bankrupt with the view of creating a preferential transfer, the bank need not surrender such balance, but may set it off against notes of the bankrupt held by it. The theory of this decision is that a deposit of money to one's credit in a bank does not operate to diminish the estate of the depositor, for where he parts with the money he creates at the same time, on the part of the bank, an obligation to pay the amount of the deposit as soon as the depositor may see fit to draw a check against it, and that on this relation of debtor and creditor the bank may set off its debt to the depositor against the debt of the depositor to the bank and a preference is not thereby effected, although in such case a bank creditor may have an advantage arising out of that relation greater than other creditors of the bankrupt who have no such relation.

The learned trial judge thought, and we think, that the rule of New York County Nat. Bank v. Massey does not apply in this case for the two reasons he gave:

"In the first place, the vital thing upon which that decision depends is missing here. The deposit of Baseman's money in the corporation account did not create an obligation on the part of the bank to pay the amount of the deposit upon Baseman's checks. This is true although it is agreed that the money was really Baseman's money and remained so at all times and although the bank was advised that he and the corporation were "one and the same thing." The bank, in spite of these facts, could have refused to pay Baseman's checks from the corporation's account and would not have been liable to him had they done so. In other words, when Baseman took money from his individual account and put it in the corporation's account, he was diminishing his estate available to (his) creditors, because no corresponding obligation to pay his checks as drawn was created. In fact I have little doubt that his main purpose was to diminish his estate available to creditors.

But secondly, even if the creation of a separate corporate entity be wholly disregarded and the transaction viewed as though there never had been any corporation, it seems almost self evident that Baseman with the consent and knowledge of the corporation was "building up" the account so that it would be available at the proper time to meet the note. Cases where this is done form a well recognized exception to the rule of New York County Nat. Bank v. Massey, supra. See Matters v. Manufacturers' Trust Company (C. C. A.) 54 F.(2d) 1010, 1013. In such a case Judge Learned Hand points out, "It was enough that the depositor alone intended not to use his right of withdrawal until the bank's right ended it. The deposit becomes a transfer because the depositor means it to be such; that is, he means not to exercise his right of withdrawal as to all of it, but to leave some part until that right is gone. It is not necessary that the residue shall be determinable in advance; no more need appear than that some part shall be left. When this is so the deposit is not in ordinary course; the part unused becomes a preferential payment when seized by set-off."

The case here is of that nature. Whenever the bankrupt's individual account got above $500 he would draw $500 out and put it in the corporation's account where he probably thought his general creditors could not reach it, or at least might have difficulty in doing so, but where, by reason of his special arrangement and understanding with the bank that he and the corporation were one and the same thing, the bank could appropriate it to the payment of its claim against him. Naturally he wished to favor the bank and keep in its good graces, since he was endeavoring to go on with his business under the form of a corporation and required credit and banking connections for that purpose. The bank seems to have had no hesitation in appropriating the corporation's funds to pay

the individual note, and apparently the corporation acquiesced and everyone understood that it could be done in that way.

We find there was ample evidence on which to submit the case to the jury and later to sustain their verdict, and hold that, under the law applicable thereto, the judgment must be affirmed.